UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- X
BRENDA MCCLARY and DARRELL MCCLARY,

                        Plaintiffs,

   -against-                                 **COMPLAINT**

Officer FNU NIEVES (Shield #1715), Officer FNU DELGADO, Lieutenant FNU LEUDESDORFF, Officer FNU KNUDSEN (Shield #111555), Officer FNU DUNN (Shield #16871), Officer FNU LOVELOCK (Shield #22435), Officer **JURY TRIAL**
FNU LETTINI, Officer FNU TSQQBAST (Shield #7522), Officer FNU LORD, and New York City Police Officers JOHN DOEs 1-6, in their individual capacities,

                        Defendants.
------------------------------------------------------------------------------- X

      Plaintiffs Brenda McClary and Darrell McClary, by their attorneys, Beldock Levine & Hoffman LLP, as and for their complaint against Officer FNU NIEVES (Shield #1715), Officer FNU DELGADO, Lieutenant FNU LEUDESDORFF, Officer FNU KNUDSEN (Shield #111555), Officer FNU DUNN (Shield #16871), Officer FNU LOVELOCK (Shield #22435), Officer FNU LETTINI, Officer FNU TSQQBAST (Shield #7522), Officer FNU LORD, and New York City Police Officers JOHN DOEs 1-6, in their individual capacities, allege as follows:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which the plaintiffs, BRENDA MCCLARY and DARRELL MCCLARY, seek relief for defendants' violations, under color of state law, of their rights, privileges, and immunities secured by 42 U.S.C. § 1983; and the Fourth and Fourteenth Amendments to the United States Constitution.

2. Defendants Officer FNU NIEVES (Shield #1715), Officer FNU DELGADO, Lieutenant FNU LEUDESDORFF, Officer FNU KNUDSEN (Shield #111555), Officer FNU DUNN (Shield #16871), Officer FNU LOVELOCK (Shield #22435), Officer FNU LETTINI, Officer FNU TSQQBAST (Shield #7522), Officer FNU LORD, and New York City Police Officers JOHN DOEs 1-6, in their individual capacities, jointly and severally, did cause plaintiffs to be subject to, *inter alia*, unreasonable searches, a warrantless search of their home, the excessive and unreasonable destruction of property, excessive and unreasonable force, and false arrest and imprisonment, causing plaintiffs loss of liberty and valuable property, as well as physical and mental injury.

3. Plaintiffs seek: (i) a declaratory judgment that defendants' entry into and search of their home violated plaintiffs' Fourth Amendment rights; (ii) compensatory damages for physical injury, psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (iii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iv) such other and further relief, including costs and attorneys fees, as this Court deems equitable and just.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

5. Plaintiffs' claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

6. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to the plaintiffs' claims took place.

## JURY DEMAND

7. Plaintiffs demand a trial by jury in this action on each and every one of their claims for which jury trial is legally available.

## THE PARTIES

8. Plaintiff BRENDA MCCLARY, a citizen of the United States, is and was at all times relevant to this complaint a resident of Queens County, City and State of New York.

9. Plaintiff DARRELL MCCLARY, a citizen of the United States, is and was at all times relevant to this complaint a resident of Queens County, City and State of New York.

10. Defendants Officer FNU NIEVES (Shield #1715), Officer FNU DELGADO, Lieutenant FNU LEUDESDORFF, Officer FNU KNUDSEN (Shield #111555), Officer FNU DUNN (Shield #16871), Officer FNU LOVELOCK (Shield #22435), Officer FNU LETTINI, Officer FNU TSQQBAST (Shield #7522), Officer FNU LORD, and New York City Police Officers JOHN DOEs 1-6 are NYPD Command and Police Officers who were involved in the entrance into and search of the plaintiffs' home and arrest of plaintiffs, and all of the actions and conduct associated therewith, including, *inter alia*, the illegal search of the home without a warrant, the excessive and costly destruction of property, the use of excessive and unreasonable force, and the arrest of plaintiffs without probable

cause. The defendants include individuals who assisted and/or conspired to and/or acted in concert and/or did engage in the violations of plaintiffs' rights described herein, or who failed to protect the plaintiffs from violations of their constitutional rights.

11. At all times relevant herein, defendants have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and officers of The City of New York ("the City") and/or the New York Police Department ("the NYPD") in engaging in the conduct described herein. The City is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, and does maintain the NYPD, which acts as its agent in the area of law enforcement. At all times relevant herein, defendants have acted for and on behalf of the City and/or the NYPD with the power and authority vested in them as officers, agents, and employees of the CITY and/or the NYPD, and incidental to the lawful pursuit of their duties as officers, employees, and agents of the City and/or the NYPD.

12. At the times relevant herein, defendants violated clearly established rights and standards under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, of which a reasonable police officer in their respective circumstances would have known.

## STATEMENT OF FACTS

13. Brenda McClary and Darrell McClary are siblings.

14. Brenda McClary lives at 112-40 Dillon Street, Queens, New York, 11433. She is co-owner of the home and is responsible for paying the mortgage.

15. 112-40 Dillon Street is located within the 113th Precinct of the NYPD in Jamaica, Queens.

16. Plaintiffs' parents, Benjamin and Patsy McClary, purchased the house located at 112-40 Dillon Street in 1982. Brenda McClary, then age 9, and Darrell McClary, then age 7, moved into the home with their parents. Brenda McClary has continued to reside in the home for the past thirty years, other than a period between October 12, 2010—when the CITY and NYPD officers caused excessive damage to the home during an unlawful search and made it uninhabitable—and August 2011. Darrell McClary lived in the home until October 12, 2010, when the CITY and NYPD officers made the home uninhabitable.

17. Plaintiffs' father, a carpenter, built many parts of the home, including a custom made doorframe, steel door, and metal security gate for the backdoor of the house. Plaintiffs' father built the backdoor to ensure that the home would be safe from intruders. Plaintiffs' father worked forty-two years at the same job to support his family, ensure that his family lived in a safe environment, and maintain the family home. He was retired for only six years when he died in 2004.

18. When Brenda and Darrell's father retired, Brenda took over paying the mortgage on the Dillon Street house, though it remained in her father and mother's names. In 2005, Brenda refinanced the mortgage in her own name, becoming a co-owner of the home with her mother, Patsy McClary.

19. On October 12, 2010, when Darrell was still living in plaintiffs' Dillon Street home, the police conducted an unreasonable search of the house, and in the course of the search, caused excessive and unreasonable destruction of property. The damage was so great that the house became uninhabitable, forcing Brenda and Darrell to live elsewhere while the damage was being repaired.

20. To recover for her damages and injuries from this unlawful search, Brenda McClary filed a complaint in this Court under docket number 12-cv-118, against the CITY and several individual officers. That case has been assigned to Chief Judge Amon, and Magistrate Judge Pohorelsky.

21. The facts of that case, as relevant to the instant complaint, are as follows:

    a. On October 12, 2010, a woman named Yolanda Lord-Achee, who lives at 112-39 Dillon Street, across the street from 112-40 Dillon Street, called 911 and claimed that a man outside of her house had a hand gun.

    b. Upon information and belief, Sergeant Sonia Christian and Officer Matthew Vorraro, NYPD officers from the 113th Precinct, responded to Ms. Lord-Achee's home and spoke with her. Ms. Lord-Achee provided the officers with a false story that Darrell McClary had come to her place of employment with a handgun, that Ms. Lord-Achee then ran home, and that as she arrived home, she saw Darrell McClary on the stoop of his own home at 112-40 Dillon Street with a handgun in his waistband.

    c. Ms. Lord-Achee's allegations were untrue. Upon information and belief, Ms. Lord-Achee made the false report to the officers because she was angry with Mr. McClary, and she admitted to the officers that she and members of her family were having an ongoing dispute with Mr. McClary.

    d. Upon information and belief, although the officers were put on notice of the suspicious nature of Ms. Lord-Achee's allegations, the officers failed to take any steps to inquire further about the circumstances of the dispute, which would have led them to take a less aggressive and unreasonable approach; and

        instead, they simply knocked on the door of 112-40 Dillon Street, and arrested Darrell McClary when he answered the door.

    e. Immediately following Darrell McClary's arrest, Sergeant Christian and Officer Vorraro unlawfully searched the McClarys' home without a warrant.

    f. Later that day, after obtaining a warrant, upon information and belief, Sergeant Christian, Officer Vorraro, and other officers from the 113th Precinct, including Officer FNU NIEVES, conducted an unreasonable search of the McClarys' home, causing excessive and unreasonable destruction of property.

    g. The damage to the McClarys' Dillon Street home was so excessive that the house was uninhabitable.

    h. Darrell McClary was charged with menacing and assault, but those charges were dismissed in July 2011.

22. In August 2011, although not all of the repairs were complete, Brenda McClary moved back into the Dillon Street house. Darrell, however, decided to continue living elsewhere because he was concerned that Ms. Lord-Achee would again have him arrested based on false accusations if he moved back across the street from her.

23. Shortly after midnight, in the early hours of Thursday, September 29, 2011, Darrell McClary came to 112-40 Dillon Street for the first time since October 12, 2010, in order to retrieve his high-school diploma, which he needed for a college application.

24. Brenda met Darrell in front of the house, and they sat on the front porch talking for some time.

25. After catching up, Brenda and Darrell went into their house and Brenda showed Darrell some of the repairs that had been made since the October 2010 destruction.

26. Around 1:35 a.m., as Brenda was showing Darrell the repairs in the basement of the house, Brenda heard pounding on the backdoor. Concerned that someone was trying to break into the house, Brenda called 911.

27. As Brenda and Darrell were walking up the stairs from the basement and were close to the inside of the backdoor, police officers, without any reasonable cause or justification, broke down the door and entered the house.

28. In the course of breaking in the backdoor, the officers destroyed the custom made doorframe, steel door, and metal security gate that the plaintiffs' now-deceased father built for the house.

29. Neither Brenda nor Darrell ever heard the officers identify themselves as police or request that the door be opened before they broke the door down and entered.

30. Brenda was still on her phone with a 911 operator while this happened, and one of the officers tried to grab the phone from Brenda's hand. Three other officers came over and together, all four officers dragged Brenda on the ground, out of the house, and along the side to the front of the house.

31. Darrell told the officers that they should not drag his sister because she recently had surgery and was still recuperating.

32. Upon information and belief, Brenda's arresting officer was defendant Officer FNU NIEVES (Shield #1715).

33. Officers handcuffed Darrell and brought him to the front of the house and placed him in a police car.

34. Officers proceeded to search the house.

35. Upon information and belief, the warrantless entry, arrest of the plaintiffs, and subsequent search of their premises was based on another false report of Yolanda Lord-Achee that Darrell McClary had a gun and was harassing her. Although the officers were already on notice that Ms. Lord-Achee had made the same false allegations in the past, the defendant officers failed to take any steps to inquire further about the circumstances, which would have led any reasonable officer to determine that the new allegations were false.

36. Upon information and belief, the group of officers that entered and/or searched the house, and/or assisted in arresting plaintiffs included defendants Officer FNU NIEVES (Shield #1715), Officer FNU DELGADO, Lieutenant FNU LEUDESDORFF, Officer FNU KNUDSEN (Shield #111555), Officer FNU DUNN (Shield #16871), Officer FNU LOVELOCK (Shield #22435), Officer FNU LETTINI, Officer FNU TSQQBAST (Shield #7522), Officer FNU LORD, and Officers JOHN DOEs 1-6.

37. Upon information and belief, several of the defendant officers were involved in and/or present during the October 2010 search of plaintiffs' home and destruction of their property.

38. When Brenda was at the 113th Precinct after her arrest, defendant Officer FNU NIEVES (Shield #1715) said to her, in sum and substance, "Don't worry, at least we didn't destroy your house this time like we did last time."

39. Neither Brenda nor Darrell was ever shown a search warrant related to the September 12, 2011 entrance and search of their home.

40. At the time that the officers entered and searched 112-40 Dillon Street, the officers did not have consent from any person to enter or search the home.

41. At the time that the officers entered 112-40 Dillon Street, no exigent circumstances existed that would have justified a warrantless entry and search of the home.

42. The single criminal charge filed against Brenda McClary from her arrest on September 29, 2011, was dismissed.

43. Darrell McClary was given an ACD for the charges filed from his arrest on September 29, 2011; and those charges are scheduled to be dismissed on October 25, 2012.

44. Brenda McClary experienced physical and emotional pain and humiliation from being dragged from her home and arrested.

45. Darrell McClary experienced humiliation from being arrested.

46. Plaintiffs suffered psychological and emotional distress as a result of this incident.

**FIRST CAUSE OF ACTION**
**(Violations of Rights Secured by 42 U.S.C. § 1983 and the**
**Fourth and Fourteenth Amendments to the United States Constitution)**

47. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

48. In committing the acts complained of herein defendants acted under color of state law to deprive plaintiffs of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

   a. the right to be free from unreasonable searches;

   b. the right to be free from unreasonable seizures, including excessive force;

   c. the right to be free from arrest without probable cause;

    d. the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiffs were aware and to which they did not consent;

    e. the right to be free from warrantless searches of the home in the absence of consent, exigent circumstances, or any other exception to the warrant requirement;

    f. the right to be free from excessive destruction of property during the entrance into and search of the home;

    g. and the right not to be deprived of property without due process of law.

49. As a direct and proximate result of defendants' deprivations of plaintiffs' constitutional rights, plaintiffs suffered the injuries and damages set forth above.

50. The conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
**(Failure to Intervene to Prevent Violations of Rights Secured by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution)**

51. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

52. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians, and to intervene where they observe another member of the police department violating constitutional rights, including, conducting a warrantless entry into or search of a home absent exigent circumstances or any other exception to the warrant requirement, destroying property,

employing unjustified and excessive force against a civilian, or falsely arresting a civilian.

53. Defendants Officer FNU NIEVES (Shield #1715), Officer FNU DELGADO, Lieutenant FNU LEUDESDORFF, Officer FNU KNUDSEN (Shield #111555), Officer FNU DUNN (Shield #16871), Officer FNU LOVELOCK (Shield #22435), Officer FNU LETTINI, Officer FNU TSQQBAST (Shield #7522), Officer FNU LORD, and Officers JOHN DOEs 1-6 were present on September 29, 2011, inside and outside of the house at 112-40 Dillon Street, and witnessed other officers, *inter alia*:

   a. enter and search the house without a warrant, exigent circumstances, or any other exception to the warrant requirement;
   b. break down the door without identifying themselves or requesting the occupants to open the door;
   c. falsely arrest plaintiffs;
   d. use unlawful force against Brenda McClary, including dragging her along the ground from inside her house, out the back door, along the side of the house, and to the front of the house and the street; and
   e. search the house.

54. The defendants' entrance into and search of 112-40 Dillon Street, was clearly made without a warrant, exigent circumstances, or any other exception to the warrant requirement, yet defendants failed to take any action or make any effort to intervene, halt, or stop the unlawful entrance and search.

55. The defendants' entrance into the house caused unreasonable and excessive damage to the backdoor and doorframe, yet the defendants failed to take any action or make any

        effort to intervene, halt, or stop the unreasonable and excessive destruction of plaintiffs' property.

56. The arrest of plaintiffs was clearly made without probable cause or other legal justification, yet defendants failed to take any action or make any effort to intervene, halt, or protect plaintiffs from being unlawfully and wrongfully arrested.

57. The use of force against plaintiff Brenda McClary was obviously excessive and unjustified under the circumstances yet defendants failed to take any action or make any effort to intervene, halt, or protect Ms. McClary from being physically brutalized.

58. Defendants' violation of plaintiffs' constitutional rights by failing to intervene in the illegal entrance and search of plaintiffs' home, the excessive destruction of property, the plaintiffs' false arrests, or the clearly unconstitutional use of force against Ms. McClary resulted in the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
**(Conspiracy to Violate Rights Secured by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment to the United States Constitution)**

59. Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

60. Defendants Officer FNU NIEVES (Shield #1715), Officer FNU DELGADO, Lieutenant FNU LEUDESDORFF, Officer FNU KNUDSEN (Shield #111555), Officer FNU DUNN (Shield #16871), Officer FNU LOVELOCK (Shield #22435), Officer FNU LETTINI, Officer FNU TSQQBAST (Shield #7522), Officer FNU LORD, and Officers JOHN DOEs 1-6; other investigative, supervisory, and command personnel of the NYPD, including unnamed officers at the 113th Precinct; and others, together and under color of

law, reached an understanding, engaged in a course of conduct, and otherwise conspired among and between themselves to deprive plaintiffs of their rights protected by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and did deprive plaintiffs of said rights, including, but not limited to, the right to be free from unreasonable searches; the right to be free from unreasonable seizures, including excessive force; the right to be free from arrest without probable cause; the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiffs were aware and to which they did not consent; the right to be free from warrantless searches of the home in the absence of consent, exigent circumstances, or any other exception to the warrant requirement; the right to be free from excessive destruction of property during the entrance into and search of the home; and the right not to be deprived of property without due process of law.

61. In furtherance of these conspiracies, the defendants and others named above, together with their unsued co-conspirators, committed the overt acts set forth in the facts above, including, but not limited to, the warrantless and unlawful entrance into plaintiffs' home, the excessive destruction of plaintiffs' property, the unlawful arrests of plaintiffs, and the use of excessive and unjustified force on Brenda McClary.

62. Said conspiracy and overt acts were continuing in nature, and caused plaintiffs' constitutional violations and injuries, pain, suffering, fear, mental anguish, imprisonment, humiliation, and loss of liberty and property, as set forth more fully above.

## **DEMAND FOR RELIEF**

**WHEREFORE**, plaintiffs demand the following relief jointly and severally against all defendants:

(a) a declaration that defendants violated the constitutional rights of plaintiff;

(b) compensatory damages for damage to property; emotional, psychological, and/or physical injuries; financial loss; and injuries to reputation suffered by plaintiff by reason of defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial;

(c) punitive damages against the individual defendants to the extent allowable by law;

(d) attorneys fees;

(e) the costs and disbursements of this action; and

(f) such other and further relief as appears just and proper.


Dated: New York, New York
       October 19, 2012

                                        /s/ Jonathan C. Moore
                                    By: _____
                                        Jonathan C. Moore (JM-6902)
                                        Joshua S. Moskovitz (JM-4721)
                                        BELDOCK LEVINE & HOFFMAN LLP
                                        99 Park Avenue, Suite 1600
                                        New York, New York 10016
                                        (212) 490-0400

                                        *Attorneys for plaintiffs*